IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY, <br><br>      Plaintiff, <br><br> v. <br><br> AMERICAN EMPIRE SURPLUS LINES INSURANCE COMPANY, BAYSWATER DEVELOPMENT, LLC, GH VERO BEACH DEVELOPMENT LLC, BAYSWATER BROKERAGE FLORIDA LLC, BAYSWATER DEVELOPMENT FLORIDA LLC, CHRISTOPHER J. CLEARY, GRAND HARBOR NORTH LAND LLC, GRAND HARBOR MANAGEMENT LLC, VERO BEACH ACQUISITION LLC, ICAHN ENTERPRISES HOLDINGS L.P., CARL RUPPERT, ROBERT THEIS, CYNTHIA JENNINGS, DAVID AND ELIZABETH TOD, BARRY AND ELLEN VAN DER MEULEN, J. ROBERT AND MARGARET MALONE, WAYNE AND MARGARET WALL, GEORGE DAVID, VIRGINIA MARION, TULLY AND MARGARET SHELLEY, <br><br>      Defendants. | **Civil Action No.** |

## COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

Plaintiff, Admiral Insurance Company ("Admiral"), by and through its undersigned attorneys, sues Defendants, American Empire Surplus Lakes Insurance Company ("American Empire"), Bayswater Development, LLC ("Bayswater"), GH Vero Beach Development LLC ("GH Vero Beach"), Bayswater Brokerage Florida LLC ("Bayswater Brokerage"), Bayswater Development Florida LLC ("Bayswater Florida"), Christopher J. Cleary ("Cleary"), Grand Harbor North Land LLC ("GH North Land"), Grand Harbor Management LLC ("GH

Management"), Vero Beach Acquisition LLC ("Vero Beach Acquisition") and Icahn Enterprises Holdings, L.P. f/k/a American Real Estate Partners, L.P. ("Icahn Enterprises"), Carl Ruppert ("Ruppert"), Robert Theis ("Theis"), Cynthia Jennings ("Jennings"), David and Elizabeth Tod ("Tods"), Barry and Ellen Van Der Meulen ("Van Der Meulens"), J. Robert and Margaret Malone ("Malones"), Wayne and Margaret Wall ("Walls"), George David ("David"), Virginia Marion ("Marion"), and Tully and Margaret Shelley ("Shelleys") for declaratory relief pursuant to 28 U.S.C. § 2201 and states as follows:

## NATURE OF THE ACTION

1.      This matter arises from claims involving damages allegedly caused by Chinese-manufactured drywall (the "Underlying Claims") installed in certain residences in a luxury home development in Vero Beach, Florida (the "Project").

2.      One of these claimants, the Van Der Meulens, has instituted a lawsuit against certain of the defendants in the Circuit Court for the Nineteenth Judicial Circuit, Florida seeking recovery of damages allegedly caused by the installation of Chinese-manufactured drywall in the claimants' home (the "Suit").

3.      Admiral seeks a Declaratory Judgment determining that the Commercial General Liability Policy it issued to certain of the named defendants neither provides insurance coverage for the Underlying Claims nor a continuing duty to defend the Suit as a result of the installation of Chinese-manufactured drywall in the residences at the Project.

## THE PARTIES

4.      Admiral is a foreign corporation organized and existing under the laws of the State of Delaware.  It has a principal place of business in New Jersey.

2

5.      American Empire is a foreign corporation organized and existing under the laws of the State of Delaware.  It has a principal place of business in Ohio and is named herein as an interested party pursuant to 28 U.S.C. § 2201.

6.      Bayswater is a limited liability company formed under the laws of the State of Delaware, and upon information or belief, its principal place of business is in White Plaints, New York.

7.      Upon information and belief, the members of Bayswater are citizens of New York or Florida.

8.      GH Vero Beach is a limited liability company formed under the laws of the State of Delaware, and upon information and belief, its principal place of business is located in Florida.

9.      Upon information and belief, the members of GH Vero Beach are citizens of New York or Florida.

10.      Bayswater Brokerage is a limited liability company formed under the laws of the State of Delaware, and upon information and belief, its principal place of business is located in Florida.

11.      Upon information and belief, the members of Bayswater Brokerage are citizens of New York or Florida.

12.      Bayswater Florida is a limited liability company formed under the laws of the State of Delaware, and upon information and belief, its principal place of business is located in Florida.

3

13.     Upon information and belief, the members of Bayswater Florida are citizens of New York or Florida.

14.     Upon information and belief, Cleary is a resident of Indian River County, Florida.

15.     GH North Land is a limited liability company formed under the laws of the State of Delaware, and upon information and belief, its principal place of business is located in New York or Florida.

16.     Upon information and belief, the members of GH North Land are citizens of New York or Florida.

17.     GH Management is a limited liability company formed under the laws of the State of Delaware, and upon information and belief, its principal place of business is located in New York or Florida.

18.     Upon information and belief, the members of GH Management are citizens of New York or Florida.

19.     Vero Beach Acquisition is a limited liability company formed under the laws of the State of Delaware, and upon information and belief, its principal place of business is located in New York.

20.     Upon information and belief, the members of Vero Beach Acquisition are citizens of New York or Florida.

21.     Icahn Enterprises is a limited partnership formed under the laws of the State of Delaware, and upon information and belief, its principal place of business is located in New York.

4

22. Upon information and belief, the partners of Icahn Enterprises are citizens of New York.

23. Bayswater, GH Vero Beach, Bayswater Brokerage, Bayswater Florida, GH North Land, GH Management, Vero Beach Acquisition, Icahn Enterprises and Cleary hereafter will be collectively referred to as the "Parties Seeking Coverage."

24. Ruppert, upon information and belief, is a resident of Indian River County, Florida and Ruppert is named herein as an interested party pursuant to 28 U.S.C. § 2201.

25. Theis, upon information and belief, is a resident of Indian River County, Florida and Theis is named herein as an interested party pursuant to 28 U.S.C. § 2201.

26. Jennings, upon information and belief, is a resident of Indian River County, Florida and Jennings is named herein as an interested party pursuant to 28 U.S.C. § 2201.

27. Tods, upon information and belief, are residents of Indian River County, Florida and Tods are named herein as interested parties pursuant to 28 U.S.C. § 2201.

28. Van Der Meulens, upon information and belief, are residents of Indian River County, Florida and Van Der Meulens are named herein as interested parties pursuant to 28 U.S.C. § 2201.

29. Malones, upon information and belief, are residents of Indian River County, Florida and Malones are named herein as interested parties pursuant to 28 U.S.C. § 2201.

30. Walls, upon information and belief, are residents of Indian River County, Florida and Walls are named herein as interested parties pursuant to 28 U.S.C. § 2201.

31. David, upon information and belief, is a resident of Indian River County, Florida and David is named herein as an interested party pursuant to 28 U.S.C. § 2201.

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW
HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

32.     Marion, upon information and belief, is a resident of Indian River County, Florida and Marion is named herein as an interested party pursuant to 28 U.S.C. § 2201.

33.     Shelleys, upon information and belief, are residents of Indian River County, Florida and Shelleys are named herein as interested parties pursuant to 28 U.S.C. § 2201.

## JURISDICTION AND VENUE

34.     This Court has jurisdiction over this action pursuant to Title 28 U.S. C. § 2201, Fed. R. Civ. P. 57 and Title 28 U.S.C. § 1332(a)(1). Upon information and belief, none of the defendants is a citizen of Delaware or New Jersey, and thus the Plaintiff has diversity of citizenship as to all Defendants. Further, the amount in controversy is in excess of $75,000.00, exclusive of interest and costs.

35.     Pursuant to 28 U.S.C. § 1391(a), this Court is a proper venue for this cause of action in that a substantial part of the events giving rise to the claim occurred in Indian River County, Florida and in the geographic area of the Southern District of Florida.

## GENERAL ALLEGATIONS

36.     Admiral issued Commercial General Liability Policy, Policy No. CA000001631-08 to Bayswater for the period December 1, 2008, to December 1, 2009 (the "Admiral Policy"), under which the Parties Seeking Coverage have sought coverage for the Underlying Claims and/or the Suit.

37.     Upon information and belief, GH Vero Beach was the developer of the Project.

38.     Admiral has denied coverage under the Admiral Policy for the Underlying Claims.

6

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW

HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

39.     Admiral has agreed to defend the Parties Seeking Coverage in the Suit pursuant to a complete reservation of rights to disclaim coverage and seek reimbursement of defense costs to the extent there is no coverage for the Suit.

40.     On or about April 16, 2010, the Parties Seeking Coverage instituted an action against Admiral and American Empire in the Supreme Court of the State of New York, County of New York, entitled Bayswater Development LLC, et al. v. Admiral Insurance Company, et al., No. 105001/10 (the "New York Action"), seeking, among other things, certain declarations as to coverage under the Admiral Policy for the Underlying Claims.

41.     The New York Action does not name Cleary, certain of the Defendants in this action that are insureds under the Admiral Policy and potentially may have liability for the Underlying Claims, or any of the claimants asserting the Underlying Claims.

42.     Admiral has instituted this action seeking a declaration that it has no obligation to defend or indemnify the Parties Seeking Coverage under the Admiral Policy for the Underlying Claims and/or the Suit for any liability, injury or damage of any kind, including costs and expenses, arising out of, resulting from, caused or contributed to by the installation of Chinese drywall at the Project.

43.     Admiral also seeks a declaration that it is entitled to reimbursement of defense costs incurred in defending the Suit to the extent there is no coverage for it.

## THE ADMIRAL POLICY

44.     The Admiral Policy has limits of $2 million per occurrence and in the aggregate. (A copy of the Admiral Policy is annexed as Exhibit "A").

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW
HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

45.     The Admiral Policy defines "you" and "your" to mean the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.

46.     The Admiral Policy defines "insured" to mean any person or organization qualifying as such under Section II – Who Is An Insured.

47.     The Admiral Policy obligates Admiral to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.  We will have the right and duty to defend the insured against any 'suit' seeking those damages.  However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

48.     The Admiral Policy provides, in relevant part, that the insurance provided under it applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" did not occur before the Retroactive Date, if any, shown in the Declarations or after the end of the policy period; and

(3)     A claim for damages because of the "bodily injury" or "property damage" is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or any Extended Reporting Period we provide under **Section V – Extended Reporting Periods.**

49.     The Admiral Policy provides that a claim by a person or organization seeking damages will be deemed to have been made at the earlier of the following times:

(1)     When notice of such claim is received and recorded by any insured or by us, whichever comes first; or

8

**(2)**    When we make settlement in accordance with Paragraph **a**. above.

All claims for damages because of "bodily injury" to the same person, including damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury", will be deemed to have been made at the time the first of those claims is made against any insured.

All claims for damages because of "property damage" causing loss to the same person or organization will be deemed to have been made at the time the first of those claims is made against any insured.

50.    Exclusion a. of the Admiral Policy precludes coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

51.    Exclusion f. of the Admiral Policy provides, in relevant part, that insurance under the Admiral Policy does not apply to:

(1)    "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a)    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.  …

. . .

(d)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

. . .

(e)    At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW
HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

(2)    Any loss, cost or expense arising out of any:

    (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

52.    Exclusion j. of the Admiral Policy precludes coverage for, among other things:

"Property damage" to:

(1)    Property you own, rent, or occupy, including any costs or expenses incurred

by you, or any other person, organization or entity, for repair, replacement, enhancement,

restoration or maintenance of such property for any reason, including prevention

of injury to a person or damage to another's property;

…

(6)    That particular part of any property that must be restored, repaired or replaced

because "your work" was incorrectly performed on it.

…

Paragraph (6) of this exclusion does not apply to "property damage" included in

the "products-completed operations hazard."

….

10

53.    Exclusion k. of the Admiral Policy precludes coverage for: "'Property damage' to 'your product' arising out of it or any part of it."

54.    Exclusion l. of the Admiral Policy precludes coverage for:

"Property damage" to "you work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

55.    Exclusion m. of the Admiral Policy precludes coverage for:

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

56.    Exclusions j.-m. of the Admiral Policy hereafter will be referred to as the "Business Risk Exclusions".

57.    Section II – Who Is An Insured of the Admiral Policy provides, in relevant part, as follows:

1.    If you are designated in the Declarations as:

. . .

11

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW

HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

          c.           A limited liability company, you are an insured.  Your members are also insureds, but only with respect to the conduct of your business.  Your managers are insureds, but only with respect to their duties as your managers.

. . .

2.      Each of the following is also an insured:

          a.           Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than . . . your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. . . .

          b.           Any person (other than your "employee" or "volunteer worker") or any organization while acting as your real estate manager.

          c.           Any person or organization having proper temporary custody of your property if you die, . . .

          d.           Your legal representative if you die, . . .

5.      Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.  However:

          a.           Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

          b.           Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

          . . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

12

58.    The Admiral Policy defines "Bodily injury" to mean "bodily injury, sickness or disease sustained by any person, including death resulting from any of these at any time."

59.    The Admiral Policy defines "Pollutants" in relevant part as follows: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste."

60.    The Admiral Policy defines "Products-completed operations hazard" in relevant part as follows:

a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)    Products that are still in your physical possession; or

(2)    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

(a)    When all of the work called for in your contract has been completed.

(b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but
which is otherwise complete4, will be treated as completed.

. . . .

13

61.     The Admiral Policy defines "Property damage" as follows:

   a.     Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.     Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

62.     The Admiral Policy defines "Occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

63.     The Admiral Policy includes the following definition of "Your Product":

   a.     Means:

       (1)     Any goods or product, other than real property, manufactured, sold, handled, distributed or disposed of by:

           (a)     You;

           (b)     Others trading under your name; or

           (c)     A person or organization whose business or assets you have acquired; and

       . . .

   b.     Includes:

       (1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

       (2)     The providing of or failure to provide warnings or instructions.

   . . . .

14

64.     The Admiral Policy includes the following definition of "Your work":

a.     Means:

    (1)     Work or operations performed by you or on your behalf; and

    (2)     Materials, parts or equipment furnished in connection with such work or operations.

b.     Includes:

    (1)     Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" and

    (2)     The providing of or failure to provide warnings or instructions.

65.     The Admiral Policy contains an endorsement entitled "Named Insured Endorsement", which identifies the following entities as Named Insureds:

Bayswater Development, LLC
Michelle Estates Homeowners Association Inc.
Michelle Estates Sewerworks, Inc.
Penwood Homeowners Association
Bayswater Penwood, LLC
Bayswater Stone Ridge, LLC
Bayswater Pondview, LLC
Bayswater Michelle, LLC
Bayswater Gracewood, LLC
Bayswater Grassy Hollow, LLC
Bayswater Tampa Bay LLC
Bayswater New Seabury LLC
Bayswater Grand Harbor LLC
Bayswater Florida LLC
Bayswater Seaside LLC
Bayswater Hammond Ridge, LLC
Bayswater Brokerage Massachusetts LLC
New Seabury Properties LLC
New Seabury Resources Management, Inc.
New Seabury Properties 98-1, LLC
New Seabury 98-2, LLC
New Seabury Development, LLC
New Seabury Private Sewer Treatment Facility, LLC
New Seabury Five Nominee Trust

15

New Seabury Popponesset Inn Nominee Trust
New Seabury Evaluation Nominee Trust
Poppy Place LLC
Promontory PT LLC
Seaquarters Condominium Trust
Vineyard Reach LLC
New Seabury Golf Club LLC
New Seabury Beach Club LLC
Bayswater Seaquarters LLC
Bayswater Flat Pond LLC
Bayswater Falling Waters, LLC

66.     In addition, GH Vero Beach, GH North Land, GH Management, Vero Beach Acquisition and American Real Estate Holdings Limited Partnership also are Named Insureds, but only as respects the ownership of land at the Project and the development and construction at the Project.

## FACTS COMMON TO ALL COUNTS

67.     Drywall imported from China currently is under investigation by various federal and state agencies for allegedly causing harm to homes, personal possessions and possibly human health.

68.     Chinese drywall has been alleged to be associated with a sulfurous odor (the smell of rotten eggs or fireworks), corrosion of household metals such as copper,

and health complaints such as asthma, nosebleeds, coughing, headaches and insomnia.

69.     A preliminary study conducted by the United States Environmental Protection Agency ("USEPA") and published on May 7, 2009, indicates that imported drywall contains elevated amounts of sulfur, strontium, iron, and organic compounds associated with acrylic paints when compared to domestic counterparts.

16

70.     A preliminary study funded by the Florida Department of Health and published on March 20, 2009, found that Chinese drywall samples contained three volatile sulfur compounds, hydrogen sulfide, carbonyl sulfide and carbon disulfide.

71.     Hydrogen sulfide, carbonyl sulfide and carbon disulfide are included in The Clean Air Act Amendments of 1990 List of Hazardous Air Pollutants.

72.     The Underlying Claims involve damages for corroded copper wiring, tarnish to jewelry, and damage to other property, damages for repair and replacement of Chinese drywall installed in homes, damages for the purchase of a new residence, costs of relocation and/or abatement of monthly maintenance fees, and for medical monitoring and/or medical treatment, all arising from the off-gassing of allegedly noxious and toxic compounds from Chinese drywall.

73.     On July 24, 2009, Bayswater's retail broker, Frank Crystal & Company ("Crystal"), wrote to Admiral "[o]n behalf of all the Insureds" and purported to provide notice under the Admiral Policy of six claims made by homeowners of residences located in the Project arising from alleged property damage and bodily injury caused by the inclusion of Chinese-manufactured drywall in those six homes.  These claims allegedly were made by Ruppert, Theis, Jennings, Tods, Van Der Meulens, and Malone.

74.     On August 10, 2009, Admiral issued a reservation of rights letter to Bayswater in which Admiral reserved its rights under various provisions of the Admiral Policy, including but not limited to, the right to dispute and/or deny coverage to the extent that any entity or person seeking coverage was not an insured under the policy.

75.     On August 12, 2009, Crystal sent a letter to Admiral referencing four additional claims that "arise from the existence of Chinese Drywall contained in single family residences

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW

HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

located at [Grand Harbor]," and also advised that nine unsold inventory homes and one home under contract were "also affected by Chinese drywall." These claims include claims allegedly made by Defendants Walls, David, Marion, and Shelleys.

76.    On September 22, 2009, Admiral issued a disclaimer in which it denied coverage for the Underlying Claims based on, among other things, the pollution exclusion (exclusion f) in the Admiral Policy.

77.    On March 23, 2010, Admiral received notice of a summons and complaint filed in the Suit, captioned <u>Barry V. Van Der Meulen, et al. v. GH Vero Beach Development, LLC, et al.</u>, currently pending in the Circuit Court for the Nineteenth Judicial Circuit, Florida, under case no. 3120 10 CA1 0581 (the "Van Der Meulen Complaint.")

78.    The Van Der Meulen Complaint seeks damages arising out of the purchase of a residence in the Project allegedly containing Chinese-manufactured drywall from GH Vero Beach Development and Vero Beach Acquisition. In addition to GH Vero Beach and Vero Beach Acquisition, the Van Der Meulen Complaint also names as Defendants Cleary, Bayswater Brokerage, Bayswater Florida, and Bayswater.

79.    On April 12, 2010, Admiral issued a reservation of rights letter to Bayswater with respect to the Van Der Meulen Complaint and agreed to provide a defense of the Suit for the Defendants that are insureds or potentially are insureds, subject to the right to deny coverage to those Defendants, withdraw from the defense of them and to seek reimbursement of any fees or expenses incurred should it later be determined that there is no coverage for them under the Admiral Policy.

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW

HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

80.     Admiral denied any obligation to defend or indemnify Bayswater Brokerage and Bayswater Florida on the ground that those entities are not insureds under the Admiral Policy.

## AS AND FOR A FIRST CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS FOR DECLARATORY JUDGMENT

81.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 80 as though fully set forth herein.

82.     Only an "insured" is entitled to coverage under the Admiral Policy.

83.     One or more of the Parties Seeking Coverage are not an "insured" under the Admiral Policy.

84.     Admiral therefore is entitled to a declaration that it has no obligation to defend or indemnify any of the Parties Seeking Coverage that is not an "insured" with respect to the Underlying Claims and the Suit.

## AS AND FOR A SECOND CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS FOR DECLARATORY JUDGMENT

85.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 84 of the Complaint as if set forth at length herein.

86.     The Admiral Policy excludes coverage for, among other things, "'bodily injury' or 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured."

87.     The Underlying Claims and the Suit involve damages allegedly sustained as a result of the emission of hazardous substances from Chinese drywall installed in the homes at issue.

19

88. The substances emitted from the Chinese drywall are "pollutants" within the meaning of the Admiral Policy.

89. To the extent that the Parties Seeking Coverage are "insureds" within the meaning of the Admiral Policy, the emissions from the Chinese drywall were at or from any premises, site or location that is or was at any time owned by an insured.

90. Admiral therefore is entitled to a declaration that it has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any liability, injury or damage of any kind, including costs and expenses, arising out of, resulting from, caused or contributed to by the installation of Chinese drywall at the Project based on the pollution exclusion (exclusion f.) contained in the Admiral Policy.

### AS AND FOR A THIRD CAUSE OF ACTION AS
### AGAINST THE DEFENDANTS FOR DECLARATORY JUDGMENT

91. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 90 of the Complaint as if set forth at length herein.

92. Under Coverage A of the Admiral Policy, Admiral is obligated to pay those sums the insured legally is obligated to pay because of "bodily injury" or "property damage" caused by an "occurrence".

93. Some or all of the Underlying Claims involve damages other than "damages because of 'bodily injury' or 'property damage'" within the meaning of the Admiral Policy, such as loss of appreciation of the value of the homes at issue and other purely economic losses.

20

94.     Admiral therefore is entitled to a declaration that it has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any damages sought that are not damages because of "bodily injury" or "property damage".

## AS AND FOR A FOURTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS FOR DECLARATORY JUDGMENT

95.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 94 of the Complaint as if set forth at length herein.

96.     Some or all of the Underlying Claims involve damages that were expected or intended from the standpoint of the insureds.

97.     Some or all of the Underlying Claims involve damages that were not caused by an "occurrence" within the meaning of the Admiral Policy.

98.     For example, the Van Der Meulen Complaint alleges that the defendants in that action knew of the defects in the home sold to the Van Der Meulens and fraudulently failed to disclose those defects.

99.     Admiral therefore is entitled to a declaration that it has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any damages sought that were expected or intended from the standpoint of the insureds and/or were not otherwise caused by an "occurrence" within the meaning of the Admiral Policy.

## AS AND FOR A FIFTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS FOR DECLARATORY JUDGMENT

100.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 99 of the Complaint as if set forth at length herein.

21

101.    The Admiral Policy excludes coverage for certain types of "property damage" based on the Business Risk Exclusions.

102.    Some or all of the Underlying Claims involve "property damage" falling within one or more of the Business Risk Exclusions.

103.    For example, the Van Der Muelen Complaint seeks damages for, among other things, the repair and/or replacement of the allegedly faulty workmanship of one or more of the defendants named in that action.

104.    Admiral therefore is entitled to a declaration that it has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any damages that fall within the scope of the Business Risk Exclusions in the Admiral Policy.

## AS AND FOR A SIXTH CAUSE OF ACTION AS
## AGAINST THE DEFENDANTS FOR DECLARATORY JUDGMENT

105.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 104 of the Complaint as if set forth at length herein.

106.    Admiral agreed to defend certain insureds/potential insureds named in the Van Der Meulen Complaint subject to a complete reservation of rights and has retained mutually agreeable counsel to conduct their defense.

107.    Admiral expressly reserved the right to deny coverage to the insureds/potential insureds, withdraw from the defense of them, and to seek reimbursement of any fees or expense incurred should it be determined that there is no coverage for them under the Admiral Policy.

108.    One or more of the counts alleged in the Van Der Meulen Complaint are not covered under the Admiral Policy and/or coverage for them expressly is excluded.

22

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW

HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

109.   To the extent the claims in the Van Der Meulen Complaint are not covered under the Admiral Policy, Admiral is entitled to reimbursement of defense costs incurred in defending the insureds/potential insureds.

110.   Admiral therefore is entitled to a judgment against the insureds/potential insureds for an amount to be determined at trial or other proceedings in this matter for defense costs incurred by Admiral in defending them against the Van Der Meulen Complaint to the extent that claims in that action are not covered under the Admiral Policy.

WHEREFORE, Admiral respectfully requests that the Court enter judgment in its favor as follows:

1.   On the First Cause of Action, declaring that Admiral has no obligation to defend or indemnify any of the Parties Seeking Coverage that is not an "insured" under the Admiral Policy with respect to the Underlying Claims and the Suit;

2.   On the Second Cause of Action, declaring that Admiral has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any liability, injury or damage of any kind, including costs and expenses, arising out of, resulting from caused or contributed by the installation of Chinese drywall at the Project based on exclusion f. of the Admiral Policy;

3.   On the Third Cause of Action, declaring that Admiral has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any damages that are not damages because of "bodily injury" or "property damage" within the meaning of the Admiral Policy;

23

4.      On the Fourth Cause of Action, declaring that Admiral has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any damages that were expected or intended by the insureds or otherwise were not caused by an "occurrence" within the meaning of the Admiral Policy;

5.      On the Fifth Cause of Action, declaring that Admiral has no obligation to defend or indemnify the Parties Seeking Coverage with respect to the Underlying Claims and the Suit for any damages that fall within the scope of the Business Risk Exclusions contained in the Admiral Policy;

6.      On the Sixth Cause of Action, judgment against the insureds/potential insureds named in the Van Der Meulen Complaint for reimbursement of defense costs incurred by Admiral in the defense of the Van Der Meulen Complaint to the extent there is no coverage for the claims asserted in that action;

7.      Awarding Admiral its attorneys' fees, costs, and expenses for having to prosecute this action; and

RITTER CHUSID BIVONA & COHEN, LLP, ATTORNEYS AT LAW
HERON BAY CORPORATE CENTER • 5850 CORAL RIDGE DRIVE, SUITE 201 • CORAL SPRINGS, FLORIDA 33076 • (954) 340-2200 • FAX (954) 340-2210

8.     Awarding such other and further relief as the Court deems just and proper.

Dated: May 5, 2010

/s/ Mitchel Chusid
MITCHEL CHUSID
Florida Bar No. 879282
mchusid@ritterchusid.com
Attorneys for Admiral Insurance Company
Heron Bay Corporate Center
5850 Coral Ridge Drive, Suite 201
Coral Springs, Florida 33076
Telephone:     (954) 340-2200
Facsimile:     (954) 340-2210

- and –

COUGHLIN DUFFY LLP
88 Pine Street, 28th Floor
New York, NY 10005
(212) 483-0105

*Attorneys for Plaintiff*

25